IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| CARTARVIS A. JORDAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 119-124 |
| ) | |
| MARSALIS LIGON; DARREL BROWN; ) | |
| and JAMES PARK, ) | |
| ) | |
| Defendants.[1] ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Georgia Diagnostic & Classification State Prison in Jackson, Georgia, is proceeding *pro se* and *in forma pauperis* in this case brought case pursuant to 42 U.S.C. § 1983, concerning events alleged to have occurred at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia.  For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendants' motion for summary judgment be **GRANTED**, (doc. no. 44), Plaintiff's motion for summary judgment and motion in opposition of Defendants' motion for summary judgment be **DENIED**, (doc. nos. 39, 49), a final judgment be **ENTERED** in favor of Defendants, and this civil action be **CLOSED**.

**I.    PROCEDURAL BACKGROUND**

Plaintiff filed this case on August 12, 2019, contending Officer Darrel Brown used

---

[1]The Court **DIRECTS** the **CLERK** to update Defendants' names on the docket in accordance with the above caption, which is consistent with Defendants' answer and motion for summary judgment. (Doc. no. 15, p. 1; doc. no. 44, p. 1.)

excessive force in the lockdown unit of ASMP, and Officers Marsalis Ligon and James Park failed to intervene. (Doc. no. 1.) Because Plaintiff did not satisfy Local Rule 56.1 by filing a response to Defendants' Statement of Material Facts, all facts proffered by Defendants that have evidentiary support in the record are hereby deemed admitted. See Loc. R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); Scoggins v. Arrow Trucking Co., 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) (deeming admitted all unopposed fact statements supported by evidentiary materials of record).

However, the Court has considered at summary judgment the statements made with specificity in Plaintiff's verified complaint and deposition because Plaintiff attested them to be true under penalty of perjury. See 28 U.S.C. § 1746; Fed. R. Civ. P. 56(e); United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1444 (11th Cir. 1991); see also Howard v. Memnon, 572 F. App'x 692, 694 (11th Cir. 2014) ("A *pro se* plaintiff's complaint, however, if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence.") Nonetheless, "[u]nsupported, conclusory allegations that a plaintiff suffered a constitutionally cognizant injury are insufficient to withstand a motion for summary judgment." Howard, 572 F. App'x at 695 (citing Bennett v. Parker, 898 F.2d 1530, 1532-34 (11th Cir. 1990)). The Court will review the entire evidentiary record, including Plaintiff's verified complaint and sworn deposition, "to determine if there is, indeed, no genuine issue of material fact." Mann v. Taster Intern., Inc., 588 F. 3d 1291, 1303 (11th Cir. 2009).

## II. FACTS

### A. Undisputed Facts

On June 17, 2019, while housed in the administrative segregation disciplinary unit of ASMP, Plaintiff was angered by Officer Brown's decision to change the direction of airflow from a fan because Plaintiff was hot. (Doc. no. 44-1, Ex. 2, ¶ 5, p. 66.) Officer Brown left to obtain a shield to protect himself from Plaintiff throwing any object at him. (Ex. 2, ¶ 5, p. 66; Pl.'s Dep., doc. no. 44-1, p. 10.) When he returned, Officer Brown instructed Plaintiff to remove his arms and close the flap of his cell door at least three times. (Pl.'s Dep., p. 41.) When Plaintiff refused to comply, Officer Brown used a flashlight to make contact with Plaintiff's arms. (Ex. 2, ¶ 5, p. 66.) The primary factual dispute is the amount of force used by Officer Brown with the flashlight.

To avoid contact with the flashlight and prevent the flap from closing, Plaintiff alternated putting his left and right arms through the flap. (Pl.'s Dep., p. 20.) Plaintiff threw feces out of a cup and onto Officers Brown and Ligon. (Doc. no. 44-3, ¶ 7.) Officers Brown and Ligon discontinued their efforts after Plaintiff threw the feces. (Pl.'s Dep., p. 24; Ex. 2, ¶ 5, p. 66.) Approximately fifteen to twenty minutes later, a shift supervisor escorted Plaintiff to the medical unit. (Pl.'s Dep., p. 21.) Medical records confirm Plaintiff did not have any fractured bones, but instead only swelling and bruising of his arms. (Doc. no. 44-1, Ex. A-3.)

### B. Disputed Facts

#### 1. Plaintiff's Version of Events

When Officer Brown returned to Plaintiff's cell with a shield and flashlight,

3

Plaintiff's right arm was outside the flap but he was not holding a cup at that time. (Pl.'s Dep., p. 23.) Plaintiff refused Officer Brown's repeated demands to remove his arms from the flap because Plaintiff did not want his flap closed. (Id. at 23, 42.) Officer Brown told Plaintiff to remove his arms from the cell door flap "or he was gonna break it." (Id. at 13.) Plaintiff thought this was an empty threat and did not remove his arms. (Id.)

When Plaintiff refused to comply, Officer Brown hit Plaintiff's arms with the flashlight at least ten times and spit in Plaintiff's face through the tray flap. (Id. at 36-37.) Officer Brown is a heavy guy "who put all his might, all his power into every swing, and every throw in that metal flashlight." (Id. at 23-24.) Plaintiff alternated his left and right arm through the tray flap to prevent Officer Brown from closing the flap. (Id. at 13.) Plaintiff testified, "I kept switching my arm, trying to avoid from having him to close the flap, but he wouldn't stop, and I got a cup, and I threw a cup out of the flap. When I threw the cup out the flap, Officer Ligon was behind me, and he, like, Man you got that mess on me." (Id.) The encounter ended with Plaintiff throwing the cup on Officers Brown and Ligon. (Id. at 24.)

While Plaintiff remembers the incident "like it was yesterday," he does not remember the contents of the cup. (Id. at 15, 25-27.) The substance landed on both Officers Brown and Ligon. (Id. at 13.) Plaintiff was unaware Officer Ligon was present until he responded "[m]an, you got that mess on me." (Id.) Officer Park worked the control booth on the main floor of the dormitory, downstairs from Plaintiff's cell, the day of the incident. (Id. at 31-32.) Officer Park walked twenty feet away from the booth and watched as Officer Brown hit Plaintiff with the flashlight. (Id. at 32.) Officer Park then told Officer Brown "that's

4

enough," but Officer Brown continued with one additional strike before Plaintiff threw the cup. (Id. at 23, 32.)

### 2. Defendants' Version of Events

On June 17, 2019, there were three fans in the administrative segregation unit. (Ex. 2, ¶ 5, p. 66.) Two of the fans were blowing in the general direction of Plaintiff's cell. (Id.) Other inmates began to complain they were not receiving enough circulation, so Officer Brown repositioned one of the two fans in their direction. (Id.) This angered Plaintiff, who threatened Officer Brown "the next time one of you walks by, I'm going to bust you." (Id.) "I'm going to bust you," is an expression used by inmates to indicate an intention to throw human waste at a prison official. (Id.) Because of this threat, Officer Brown, accompanied by Officer Ligon, attempted to close Plaintiff's cell door flap. (Ex. 2, ¶ 5, p. 66; doc. no. 44-1, Ex. 3, ¶ 6, p. 75.) Officer Brown secured a shield for cover, and by the time he returned, Plaintiff had his arm extended holding a cup of feces. (Ex. 2, ¶ 5, p. 66; Ex. 3, ¶ 6, p. 75.) Officer Brown grabbed his flashlight and attempted to knock the cup of feces out of Plaintiff's hand, unsuccessfully swiping at the cup two or three times. (Ex. 2, ¶ 5, p. 66.) While swiping at the cup, Officer Brown incidentally hit Plaintiff's hand or arm; however, his swipes were not aggressive because he did not want the contents of the cup to splatter everywhere. (Id.)

Officer Park was the designated booth officer, and the booth was located in the middle of building twelve, between A-1 and A-2. (Doc. no. 44-1, Ex. 4, ¶ 3, p. 82.) Officer Park was not permitted to leave his post due to security protocol because there was no officer present to take his post. (Id.) Officer Park would have had to leave the control booth

5

unsupervised to intervene.  (Pl.'s Dep., p. 32.)  Therefore, while Officer Park visually observed the incident with Plaintiff and Officer Brown, he remained in the booth.  (Ex. 4, ¶ 5, p. 83.)  Defendants deny any excessive force was used.  (Ex. 2, ¶ 9, p. 67; Ex. 3, ¶ 8, p. 75; Ex. 4, ¶ 8, p. 84.)

### C. Plaintiff's Medical Records

On the date of the incident and the next day, medical staff noted swelling in Plaintiff's upper left arm, left elbow, and right ulnar, which they treated with ibuprofen and ice.  (Ex. A-3; Dr. Alston Decl., doc. no. 44-1, ¶ 7.)  X-rays of the left elbow and right wrist revealed no fractures or abnormalities.  (Doc. no. 44-1, Exs. A-4, A-5; Dr. Alston Decl., ¶ 8.)

On August 21, 2019, Plaintiff was evaluated for complaints of numbness in the left elbow and right wrist that he claimed to have been experiencing since June 18, 2019.  (Doc. no. 44-1, Ex. A-11.)  Finding normal strength, no injuries, no tenderness, and no damage to his arms or the nerves, Dr. Alston recommended Plaintiff for an orthopedic consultation and prescribed ibuprofen as needed for two weeks.  (Doc. no. 44-1, Ex. A-8; Dr. Alston Decl., ¶ 11.)  X-rays of the left elbow and right wrist revealed "no fracture/dislocation" with a diagnosis of "[n]umbness right forearm/wrist" based solely on Plaintiff's subjective complaint of numbness.  (Dr. Alston Decl., ¶ 13.)

On October 25, 2019, Dr. Sutton evaluated Plaintiff for complaints of pain to his forearms and a small area of decreased sensation in his right forearm.  (Doc. no. 44-1, Ex. A-12.)  Dr. Sutton found Plaintiff had full mobility in his bilateral forearms, full strength, normal capillary refill, normal sensation to the left arm, and Plaintiff's report of diminished sensation to a small area of the right arm.  (Id.)  Dr. Sutton assessed "forearm pain, no

obvious pathology," prescribed over the counter pain medication, and advised Plaintiff to follow up as needed. (Doc. no. 44-1, Ex. A-13.) The same findings were made in connection with an examination on November 15, 2019. (Doc. no. 44-1, Ex. A-14.) Since December 2019, Plaintiff no longer has any numbness or pain in his hand. (Pl.'s Dep., p. 31.)

### III.  DISCUSSION

#### A.  Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608.  The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint.  Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).  Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56.  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59).  A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B.    Plaintiff's Motion for Summary Judgment

Plaintiff's motion for summary judgment is little more than a recitation of his claims and conclusory allegations which are insufficient to support a motion for summary judgment. (See doc. no. 39.)  First, in contravention of Local Rule 56.1, there is no brief in support of the motion and no separate, short, and concise statement of the material facts – supported by citation to the record – to which Plaintiff contends there is no genuine dispute to be tried.  A motion may be summarily denied for failure to comply with the Court's Local Rules. Layfield v. Bill Heard Chevrolet Co., 607 F.2d 1097, 1099 (5th Cir. 1979)[2] (holding that failure to comply with the Local Rules may result in summary denial of motion).

Second, Plaintiff appears to concede that he is not entitled to summary judgment

---

[2]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981.

when he argues "there are genuine disputes as to material facts in the case at bar . . . for jury determination." (Doc. no. 39, p. 1.)  However, for Plaintiff to prevail on his own motion at the summary judgment stage, he must show there is no "genuine dispute as to any material fact" to establish he is entitled to judgment as a matter of law.  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  Thus, by definition, if Plaintiff is relying on the prospect of a jury to evaluate the merits of his case, he is not entitled to summary judgment.

For these reasons and the reasons set forth below as to why Defendants are entitled to summary judgment, Plaintiff's motion for summary judgment should be **DENIED**.  (Doc. no. 39.)  Plaintiff's response to Defendants' motion for summary judgment was filed twice on the docket, and once mistakenly as a motion that should be **DENIED**.  (Doc. no. 49.)

### C. Defendants Are Entitled to Summary Judgment

Defendants contend the undisputed material facts establish they are entitled to summary judgment on Plaintiff's Eighth Amendment claims, they are entitled to qualified immunity, and should the case proceed to trial, Plaintiff is limited to nominal damages because his alleged physical injuries are *de minimis*.  (Doc. no. 44-2.)  Plaintiff opposes the motion, contending there are genuine factual disputes for jury determination.  (Doc. nos. 48-49.)

#### 1. Overview of Excessive Force Legal Landscape

"The Eighth Amendment's proscription of cruel and unusual punishments also governs prison officials' use of force against convicted inmates." Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999).  To prevail on an excessive force claim, Plaintiff must

9

satisfy both an objective and subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Objectively, Plaintiff must show that he suffered a "sufficiently serious" deprivation harmful enough to establish a constitutional violation. Id. *De minimi*s uses of physical force are beyond constitutional recognition, provided that the use of force is not of a sort "repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). Accordingly, not "every malevolent touch by a prison guard gives rise to a federal cause of action," even if it "may later seem unnecessary in the peace of a judge's chambers . . . ." Id. at 9 (citation omitted). However, because injury and force are imperfectly correlated and it is the force used that counts, an inmate "who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

Subjectively, Plaintiff must show that the actions taken involved the unnecessary and wanton infliction of pain. See Whitley v. Albers, 475 U.S. 312, 319 (1986). That is,

> [F]orce does not violate the Eighth Amendment merely because it is unreasonable or unnecessary: "The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."

Campbell, 169 F.3d at 1374 (quoting Whitley, 475 U.S. at 319). Rather, the Court must consider "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996) (quoting Hudson, 503 U.S. at 7).

10

The subjective component analysis narrows the precise inquiry applicable at the summary judgment stage as follows:

> [C]ourts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support *a reliable inference of wantonness in the infliction of pain* under the standard we have described, the case should not go to the jury.

Campbell, 169 F.3d at 1375 (quoting Whitley, 475 U.S. at 322).

Because the subjective component is contextual, courts consider the following factors: (1) extent of injury, (2) need for application of force, (3) relationship between need and amount of force used, (4) threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7; Campbell, 169 F.3d at 1375. Any action taken should be viewed in light of the wide-ranging deference accorded prison officials acting to preserve discipline and institutional security. Hudson, 503 U.S. at 6; Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (*per curiam*). For example, use of an appropriate degree of force to compel compliance with a valid order is justified. Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987); see also Ort v. White, 813 F.2d 318, 325 (11th Cir. 1987) (evaluating excessive force claim requires consideration of whether immediate coercive measures were taken "in a good faith effort to restore order or prevent a disturbance, and if the force used was reasonable in relation to the threat of harm or disorder apparent at the time").

### 2. Officer Brown is Entitled to Summary Judgment Because the Force Used Was a Good Faith Effort to Restore Order, Not Maliciously and Sadistically to Cause Harm

Consideration of the multiple factors used to evaluate the subjective and objective components of an excessive force claim shows Officer Brown is entitled to summary judgment.

#### a. The Need to Exercise Force and the Threat Reasonably Perceived by Officer Brown

Plaintiff left Officer Brown with no choice but to use force by refusing to comply with repeated directives to put his arms inside the door flap and close the flap. "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990). Courts within this circuit have consistently held an inmate's refusal to remove his arm from a cell door tray flap constitutes a disturbance and risk to safety, justifying use of force.[3]

---

[3] See Driver v. Novy, No. 6:15-CV-55, 2017 WL 2313005, at *3 (S.D. Ga. Mar. 22, 2017), adopted by, Driver v. Novy, No. 6:15-CV-55, 2017 WL 2312835 (S.D. Ga. May 26, 2017) (finding need to exercise force because "Plaintiff refused a direct command from Defendant to remove his arm from the tray flap."); Williams v. Woodson, No. 5:15-CV-0372-LJA-MSH, 2017 WL 11485723, at *5 (M.D. Ga. June 21, 2017), adopted by, Williams v. Woodson, No. 5:15-CV-372-LJA-MSH, 2017 WL 11485813 (M.D. Ga. Nov. 28, 2017) ("Evidence shows a legitimate need for the application of force. Plaintiff admits that he placed his forearms and elbows in the flap in order to prevent Defendant from being able to close the flap."); Kelly v. Jones, No. 5:15-CV-0337-CAR-MSH, 2017 WL 2676422, at *3 (M.D. Ga. June 21, 2017) (holding inmate's refusal to remove his arm from tray flap constituted disturbance requiring use of force); Brockington v. Stanco, No. 5:14-CV-38-MTT-CHW, 2016 WL 4443204, at *3 (M.D. Ga. May 25, 2016), adopted by, Brockington v. Stanco, No. 5:14-CV-38 (MTT), 2016 WL 4445475 (M.D. Ga. Aug. 19, 2016) (finding defendant "had a legitimate need for force, as Plaintiff refused to remove his arm from the tray flap opening after [defendant] made repeated requests for Plaintiff to do so, and that "buckling the flap" was against prison rules.");

Plaintiff's allegation that Officer Brown threatened to break his arm does not preclude summary judgment. The use of threatening language is properly considered under the totality of the circumstances, but words alone do not transform acceptable force into force that is sadistic and malicious. Bozeman v. Orum, 422 F.3d 1265, 1271 n.11 (11th Cir. 2005), *abrogated on other grounds*, Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472-73 (U.S. 2015); see also Kraus v. Martin Cty. Sheriff's Off., 753 F. App'x 668, 674 (11th Cir. 2018) (finding "words alone do not transform an acceptable use of force into one undertaken in bad faith."); Cockrell v. Sparks, 510 F.3d 1307, 1312 (11th Cir. 2007) (holding amount of force conveyed by open-handed shove and order to "'shut the hell up' evidence[d] a desire to restore order, not a wish to sadistically cause harm."); Evans v. Stephens, 407 F.3d 1272, 1282 (11th Cir. 2005) (holding totality of the circumstances, and not words alone, determines whether an action is unconstitutional); Howell v. Houston Cty., Ga., No. 5:09-CV-402 CAR, 2011 WL 3813291, at *21 (M.D. Ga. Aug. 26, 2011) (finding officer's alleged statement "Guess what, Baker, you get to tase Shamel," did not support finding of malicious and sadistic attempt to cause harm where officers gave plaintiff opportunity to comply after statement was made, and force was not used until plaintiff further escalated situation).

      **b.**      **The Relationship Between the Need to Use Force and the Amount Applied**

While Plaintiff claims Officer Brown used every morsel of his strength and body weight when striking him with the flashlight, the medical records do not reflect injuries consistent with this description. Even when these allegations are credited fully to Plaintiff at

---

Moore v. James, No. 7:09-CV-98 HL, 2013 WL 1296775, at *2 (M.D. Ga. Mar. 27, 2013) ("By not obeying direct orders, Plaintiff created a situation which justified the use of some force.").

summary judgment, the force was still insufficient to deter Plaintiff's disobedience. Indeed, Plaintiff admits that, despite the flashlight strikes by Officer Brown, he kept pushing his arms through the flap and switching them out to prevent Officer Brown from closing the flap, and he increased the level of defiance despite the flashlight strikes by grabbing a cup of feces and throwing it on Officers Brown and Ligon. (Pl.'s Dep., pp. 20-21, 26.)

It is undisputed the cup contained feces because Officers Brown and Ligon swear this to be true and Plaintiff cannot recall the contents. (Ex. 2, ¶ 5, p. 66; Ex. 3, ¶ 6, p. 75; Pl.'s Dep., pp. 15, 25-27.) Thus, Officer Brown's use of force was not excessive given Plaintiff's repeated refusal to comply with valid orders. Instead, it was proportionate to the need to restore order and ensure compliance with orders. See Johnson v. Moody, 206 Fed. Appx. 880, 882-84 (11th Cir. 2006) (holding defendant kicking tray door with his foot resulting in minor injury proportional to inmate's refusal to remove arm from tray flap); Williams, 2017 WL 11485723, at *5 (finding proportional force "[e]ven if Defendant slammed the flap onto Plaintiff's arms "six to seven times").

### c. Extent of Injury and Any Efforts to Temper the Severity of a Forceful Response

Plaintiff suffered no significant injuries as a result of the encounter. He admits as much by confirming what the medical records suggest, i.e. he merely suffered pain and mild swelling in his arms and was prescribed ibuprofen. The only injury that lingered was numbness in a small area of his forearm for which repeated medical examinations could not find an underlying physical condition. While the "nature of the force rather than the extent of the injury" is the relevant inquiry, the extent of injury is still a "factor that may suggest whether the use of force could plausibly have been thought necessary in a particular

situation." Wilkins v. Gaddy, 559 U.S. 34, 34, 37 (2010) (internal quotations and citation omitted). Here, the undisputed facts show this factor weighs heavily in favor of Defendants.[4]

Plaintiff complained of continued pain for several months after the incident, but examinations revealed no swelling, serious injury, or functional impairment to Plaintiff's upper extremities. See Johnson, 206 Fed. Appx. at 884 ("Although [plaintiff] complained of pain for several months, the objective medical evidence does not support his subjective complaints . . . .").

Concerning efforts to temper the severity of the forceful response, Officer Brown stopped striking Plaintiff's arms with the flashlight despite Plaintiff's continued efforts to defy direct orders by leaving his arms in the flap and refusing to close it. See, e.g., Sanks v. Williams, 402 F. App'x 409, 412-13 (11th Cir. 2010) (finding no excessive force where defendant "ceased using force when it was no longer necessary to control [plaintinff]."); Bell v. Lamb, No. 6:17-CV-12, 2020 WL 1817320, at *6 (S.D. Ga. Mar. 6, 2020), *adopted by*, Bell v. Lamb, No. 6:17-CV-12, 2020 WL 1811650 (S.D. Ga. Apr. 8, 2020) (finding no excessive force where "[a]fter going to the ground, [d]efendant . . . did not kick, punch, or otherwise inflict intentional pain upon [p]laintiff."); see also Harris v. Allison, No. CV 14-1104 (RBW), 2016 WL 3166296, at *3 (D.D.C. June 6, 2016) (finding no excessive force

---

[4] Plaintiff also asserts Officer Brown spat on him, which does not materially change the analysis in his favor. See Hilton v. Sec'y for Dept of Corr., 170 F. App'x 600, 604 (11th Cir. 2005) (holding defendant spitting tobacco on plaintiff was *de minimis* use of force and did not support an excessive force claim); Dyal v. Lee, No. 5:17-CV-377-OC-34PRL, 2019 WL 1294998, at *7 (M.D. Fla. Mar. 21, 2019) (holding plaintiff's claims regarding "slaps to the face and spitting" did not state Eighth Amendment constitutional violation because no allegation of resulting injury).

where "[n]otably, after the defendant officers were ultimately able to restrain the plaintiff, no additional force was used.").

In addition, prison officials transported Plaintiff to the medical unit without delay after the incident, and medical personnel promptly evaluated Plaintiff on every occasion thereafter when he complained about his arms. These undisputed facts militate strongly against a finding of sadistic and malicious force. See, e.g., Fennell v. Gilstrap, 559 F.3d 1212, 1220 (11th Cir. 2009) (*per curiam*) ("The immediate offer of medical assistance shows an effort to temper the severity of the use of force."); Cockrell, 510 F.3d at 1312 (finding immediate medical assistance tempered severity of forceful response and made it less likely defendants acted sadistically instead of in good faith); Moore v. James, No. 7:09-CV-98 HL, 2013 WL 1296775, at *3-4 (M.D. Ga. Mar. 27, 2013) (finding no excessive force where force used to gain plaintiff's compliance with verbal commands, and "after the incident was over, Plaintiff was immediately seen by medical personnel."); Howell, 2011 WL 3813291, at *21 (finding good faith effort to restore order where "officers immediately called the nurse to tend to [plaintiff]" after he was tased).

For all of these reasons, the Court finds Officer Brown is entitled to summary judgment because the force he used was necessary, reasonable, proportional to the need, and did not violate Plaintiff's Eighth Amendment rights.

### 3. Officers Ligon and Park Are Entitled to Summary Judgment Because They Had No Duty to Intervene

The Eighth Amendment imposes a duty on prison officials to intervene when another officer uses excessive force. Priester v. City of Riviera Beach, 208 F.3d 919, 924 (11th Cir. 2000). This duty only arises when "the official was present at the scene and failed to take

reasonable steps to protect the victim" from the fellow officer's unlawful conduct. Reid v. Neal, 688 F. App'x 613, 617 (11th Cir. 2017). However, an officer is not obligated to intervene where there is no underlying excessive force violation. Crenshaw v. Lister, 556 F.3d 1283, 1294 (11th Cir. 2009). For the reasons explained *supra*, Officers Ligon and Park were not obligated to intervene because Officer Brown did not use excessive force against Plaintiff. Additionally, even if Officer Brown did use excessive force against Plaintiff, which he did not, Officer Park would still be entitled to summary judgment because he had no reasonable opportunity to intervene due to his assignment as the designated booth officer on the day of the incident. Therefore, Officers Ligon and Park are entitled to summary judgement on Plaintiff's failure to intervene claim.

### 4. Defendants' Claims Regarding Qualified Immunity and Damages Are Moot

Defendants argue they are entitled to qualified immunity and that even if a constitutional violation is found, Plaintiff is limited to recovery of nominal damages because his injuries are *de minimis*. (Doc. no. 44-2, pp. 20-24.) Because Defendants are entitled to summary judgment on the substantive merits of Plaintiff's claims as discussed *supra*, the issues of qualified immunity and damages are ultimately moot, and the Court will not address them.

### IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion for summary judgment be **GRANTED**, (doc. no. 44), Plaintiff's motion for summary judgment and motion in opposition of Defendants' motion for summary judgment be **DENIED**, (doc. nos. 39, 49), a final judgment be **ENTERED** in favor of

Defendants, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 19th day of May, 2021, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA